[Cite as *State v. Caudill*, 2018-Ohio-550.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2017-05-011 |
| - vs - | : | O P I N I O N<br>2/12/2018 |
| | : | |
| SCOTT A. CAUDILL, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CRI 20160158

Stephen J. Pronai, Madison County Prosecuting Attorney, Rachel M. Price, 59 North Main Street, London, Ohio 43140, for plaintiff-appellee

Stephen P. Hardwick, Assistant Ohio Public Defender, 250 East Broad Street, Suite 1400, Columbus, Ohio 43215, for defendant-appellant

**PIPER, J.**

{¶ 1} Defendant-appellant, Scott Caudill, appeals his convictions in the Madison County Court of Common Pleas for illegal manufacturing and possession of drugs.

{¶ 2} Madison County officials went to the home of Travis Basham to perform a welfare check on Basham's children. The officials located a methamphetamine lab, and law enforcement officers later returned to arrest Basham. Officers discovered a

methamphetamine lab in the shed on Basham's property, just outside his house. Officers found glass beakers, plastic funnels, coffee filters, bottles with tubing, white powder on a glass plate, plastic mixing bottles, and a glass container with 23 grams of dissolved methamphetamine.

{¶ 3} Basham told officers that Caudill was a frequent visitor to Basham's house and that Caudill participated in manufacturing methamphetamine and using the drugs they created. Officers ran Caudill and his wife's information through a national database and learned that the two frequently purchased pseudoephedrine, a key ingredient in making methamphetamine, on multiple occasions. Officers later determined that Caudill's fingerprints were located on the equipment used to manufacture the methamphetamine found in Basham's shed. Officers arrested Caudill, and the state charged him with illegal manufacture of drugs, illegal assembly or possession of chemicals for the manufacture of drugs, and aggravated possession of drugs.

{¶ 4} Caudill pled not guilty, and the matter proceeded to a two-day trial. The jury found Caudill guilty on each count. During sentencing, the trial court merged the manufacturing charge into the possession conviction and sentenced Caudill to an aggregate sentence of five years in prison. The trial court ordered Caudill to pay a fine over objection. Caudill now appeals his convictions and sentence, raising the following assignments of error.

{¶ 5} Assignment of Error No. 1:

{¶ 6} THE TRIAL COURT ERRED BY ENTERING A JUDGMENT OF CONVICTION ON COUNT III, AGGRAVATED DRUG POSSESSION WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN THE CONVICTION AND WHEN THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 7} Caudill argues in his first assignment of error that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶ 8} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 9} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66.

{¶ 10} In reviewing the evidence, an appellate court must be mindful that the jury, as the original trier of fact, was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). Therefore, an appellate court will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.* Although the legal concepts of sufficiency of the evidence and weight of the evidence are quantitatively and qualitatively

different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 11} In this assignment of error Caudill challenges only his conviction for possession of the finished methamphetamine product. According to R.C. 2925.11(A), "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Possession means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession may be constructive or actual. *State v. Williams*, 12th Dist. Butler No. CA2014-09-180, 2015-Ohio-2010, ¶ 14.

{¶ 12} "An accused has 'constructive possession' of an item when the accused is conscious of the item's presence and is able to exercise dominion and control over it, even if the item is not within the accused's immediate physical possession." *State v. Jester*, 12th Dist. Butler No. CA2010-10-264, 2012-Ohio-544, ¶ 25. Constructive possession may be proven by circumstantial evidence alone. *Williams* at ¶ 15. Absent a defendant's admission, the surrounding facts and circumstances, including the defendant's actions, are evidence that the trier of fact can consider in determining whether the defendant had constructive possession. *Id.*

{¶ 13} A person may knowingly possess or control property belonging to another; the state need not establish ownership to prove constructive possession and two or more persons may have possession of an object together if they can control it, exclusive of others. *State v. Weckner*, 12th Dist. Brown No. CA2001-06-009, 2002-Ohio-1012.

{¶ 14} During trial, the state presented testimony demonstrating that Caudill's finger prints were found on several items necessary in the manufacture of the methamphetamine,

including the mason jar in which the finished product was located, a bottle of drain opener, and a box containing a ripped-open ice compress.[1] These materials were used during the manufacturing of the methamphetamine found in the shed, and Caudill's fingerprints demonstrate his direct involvement with the process and finished product.

{¶ 15} Moreover, Basham was a witness at trial and testified that Caudill brought pseudoephedrine to make the batch of methamphetamine seized from the shed by officers. An officer confirmed that Caudill was known to purchase pseudoephedrine, and testified that a search for Caudill's name in a national database indicated that Caudill purchased pseudoephedrine every 30 days. The officer further testified that there is a 30-day waiting period between times one is permitted to purchase pseudoephedrine.

{¶ 16} Basham also testified that Caudill was involved in the manufacturing process by cooking the methamphetamine, peeling batteries, measuring chemicals, and shaking the bottles. Caudill also instructed Basham on the manufacturing process, and Basham testified that Caudill was present on the nights when the specific methamphetamine was made that officers ultimately seized.

{¶ 17} After reviewing the record, and viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Moreover, we find that the jury did not clearly lose its way or create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Caudill's first assignment of error is, therefore, overruled.

{¶ 18} Assignment of Error No. 2:

{¶ 19} THE TRIAL COURT ERRED BY CONVICTING MR. CAUDILL OF A SECOND-

---

1. A witness testified that ice packs contain ammonium nitrate and that in his experience, the only reason to rip open an ice pack is to use its contents in the one-pot method of manufacturing methamphetamine.

DEGREE FELONY WHEN THE VERDICT FORM SUPPORTED ONLY A CONVICTION FOR A THIRD-DEGREE FELONY.

{¶ 20} Caudill argues in his second assignment of error that the trial court erred in convicting him of a second-degree felony for Count I, illegal manufacture of drugs, when the jury verdict form did not provide support for a second-degree conviction.

{¶ 21} According to R.C. 2945.75(A)(2), "a guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged."

{¶ 22} "Pursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." *State v. McDonald*, 137 Ohio St.3d 517, 2013-Ohio-5042, ¶ 13. "The verdict form itself is the only relevant thing to consider in determining whether the dictates of R.C. 2945.75 have been followed." *Id.* at ¶ 17.

{¶ 23} According to R.C. 2925.04(A), "no person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance." R.C. 2925.04(C)(2) and (3) further provide that if the drug involved is included in Schedules I or II or is methamphetamine, illegal manufacture of drugs is a felony of the second degree, and is subject to a mandatory prison term. Otherwise, R.C. 2925.04(C)(4) provides that if "the drug involved in the violation of division (A) of this section is any compound, mixture, preparation, or substance included in schedule III, IV, or V, illegal manufacture of drugs is a felony of the third degree * * *."

{¶ 24} Therefore, and to know which degree of manufacturing Caudill was guilty of, the jury verdict form was required to contain either a designation of the specific degree or a

special verdict finding as to the drug that Caudill was guilty of manufacturing to determine on which schedule the drug is listed. However, the verdict form did not list the degree for which the jury found Caudill guilty. Nor did the verdict form specify the drug for which the jury found Caudill guilty of manufacturing.

{¶ 25} The state contends that the only drug discussed during the trial was methamphetamine. While that may be true, the Ohio Supreme Court specifically directs reviewing courts to focus only upon the jury verdict form when determining whether the conviction comports with the dictates of R.C. 2945.75. As such, we find that the jury verdict form for Caudill's conviction for Count I, illegal manufacture of drugs, does not contain a degree specification nor any special findings by the jury as to what drug Caudill was guilty of manufacturing. The verdict form, therefore, supports only the third-degree felony charge. The trial court is ordered to vacate Caudill's conviction for a second-degree felony on Count I, and instead, enter a judgment convicting Caudill of a third-degree felony for that count. Caudill's second assignment of error is, therefore, sustained.

{¶ 26} Assignment of Error No. 3:

{¶ 27} THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING A $7,500 FINE AFTER DENYING MR. CAUDILL THE OPPORTUNITY TO EXPLAIN WHY HE LACKED THE ABILITY TO PAY.

{¶ 28} Caudill argues in his third assignment of error that the trial court erred in ordering him to pay a $7,500 fine as part of his sentence.

{¶ 29} According to R.C. 2929.18(A)(1), a trial court may sentence the defendant to a financial sanction as part of the defendant's felony sentence. "Before imposing a financial sanction under section 2929.18 of the Revised Code * * * the court shall consider the offender's present and future ability to pay the amount of the sanction or fine." R.C. 2929.19(B)(5).

{¶ 30} "Although preferable for appellate review, a trial court need not explicitly state in its judgment entry that it considered a defendant's ability to pay a financial sanction. Rather, courts look to the totality of the record to see if this requirement has been satisfied." *State v. Dehner*, 12th Dist. Clermont No. CA2012-12-090, 2013-Ohio-3576, ¶ 47. There are no express factors that must be considered or specific findings made regarding the offender's ability to pay. *State v. Dandridge*, 12th Dist. Butler No. CA2003-12-330, 2005-Ohio-1077, ¶ 6. R.C. 2929.19(B)(5) requires only that the trial court *consider* the offender's present or future ability to pay. *Id.*

{¶ 31} "The determination that a defendant is indigent for purposes of appointed counsel is separate and distinct from a determination of being indigent for purposes of paying a mandatory fine." *State v. Johnson*, 12th Dist. Butler No. CA2011-11-212, 2014-Ohio-3776, ¶ 15.

{¶ 32} Caudill filed an affidavit of indigency after being indicted, and later objected to any fine being imposed at sentencing. The affidavit of indigency reflected that Caudill had no income and few expenses. The trial court questioned Caudill regarding his finances and how he generated income. Specifically, the court asked Caudill how he had been supporting himself, and asked Caudill to describe his employment history. Caudill reported he had been "drawing assistance" but also told the court that he received help from his son and that he worked on cars, "mechanic work here and there." The trial court went on to conclude that while Caudill was indigent for the purposes of court-appointed counsel, Caudill nonetheless had "future earning capacities." The court then imposed a $7,500 fine.

{¶ 33} While the transcript indicates that Caudill may have been interrupted by the trial court during his answer to the question about his employment history, the record nevertheless indicates that the trial court was able to consider Caudill's present and future ability to pay based on the answers Caudill had already given. Caudill invites us to speculate

that he had other reasons to offer as to his inability to earn future income once released from incarceration had the trial court not interrupted him. However, and based on the record before us, we decline that invitation.

{¶ 34} After personally observing Caudill and noting the difference between Caudill's affidavit and his representations at the sentencing hearing, nothing was presented to the trial court suggesting Caudill would not be able to pursue his mechanic endeavors in the future once his sentence has been served. We do not find the trial court failed to consider Caudill's future ability to pay toward fines. As such, we overrule Caudill's final assignment of error.

{¶ 35} Judgment affirmed in part, reversed in part, and the matter is remanded for the sole purpose of vacating Caudill's conviction for Count I as a second-degree felony, and entering a judgment and resentencing Caudill on Count I as a third-degree felony.

S. POWELL, P.J., and M. POWELL, J., concur.