[Cite as *State v. DeWitt*, 2018-Ohio-1892.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2017-08-123 |
| | : | O P I N I O N |
| - vs – | | 5/14/2018 |
| | : | |
| RICHARD E. DEWITT, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 17CR32853

David P. Fornshell, Warren County Prosecutor, Kirsten A. Brandt, 520 Justice Drive, Lebanon, OH 45036, for plaintiff-appellee

Gieske Law Office, LLC, Krista M. Gieske, 810 Sycamore Street, 3rd Floor, Cincinnati, Ohio 45202, for defendant-appellant

**S. POWELL, P.J.**

{¶ 1} Defendant-appellant, Richard E. DeWitt, appeals from his conviction in the Warren County Court of Common Pleas after a jury found him guilty of aggravated possession of drugs and possession of drug paraphernalia. For the reasons outlined below, we affirm.

{¶ 2} On April 10, 2017, the Warren County Grand Jury returned an indictment

charging DeWitt with aggravated possession of drugs in violation of R.C. 2925.11(A), a second-degree felony pursuant to R.C. 2925.11(C)(1)(c), and possession of drug paraphernalia in violation of R.C. 2925.14(C)(1), a fourth-degree misdemeanor. The charges arose when Officer Jeff Little of the Waynesville Police Department discovered two baggies containing 16.08 grams of methamphetamine, a glass pipe, a digital scale, and a butane lighter, after initiating a traffic stop of DeWitt's vehicle at the intersection of Edwards Drive and High Street in Waynesville, Warren County, Ohio on the night of March 11, 2017. Following a jury trial, DeWitt was found guilty of both charges and sentenced by the trial court to a mandatory three-year prison term. The trial court also notified DeWitt that he would be subject to a mandatory three-year term of postrelease control.

{¶ 3} DeWitt now appeals, raising a single assignment of error for review.

{¶ 4} THE TRIAL COURT ERRED IN CONVICTING APPELLANT OF AGGRAVATED POSSESSION OF DRUGS AND POSSESSION OF DRUG PARAPHERNALIA BECAUSE SAID CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 5} In his single assignment of error, DeWitt argues his conviction must be reversed because it was against the manifest weight of the evidence. We disagree.

{¶ 6} In reviewing a manifest weight of the evidence challenge, this court examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. In conducting such a review, this court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-

08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Blair*, 12th Dist. Butler No. CA2014-01-023, 2015-Ohio-818, ¶ 43.

{¶ 7} As noted above, DeWitt was convicted of aggravated possession of drugs in violation of R.C. 2925.11(A), which provides "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." DeWitt was also convicted of possession of drug paraphernalia in violation of R.C. 2925.14(C)(1). Pursuant to that statute, "no person shall knowingly use, or possess with purpose to use, drug paraphernalia."

{¶ 8} As defined by R.C. 2901.22(B), a person acts knowingly, regardless of purpose, "when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." A defendant's knowledge may be inferred from the totality of the surrounding circumstances. *State v. NRAG, LLC*, 12th Dist. Fayette No. CA2008-12-043, 2009-Ohio-4137, ¶ 22. On the other hand, the term "possession" means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession may be constructive or actual. *State v. Williams*, 12th Dist. Butler No. CA2014-09-180, 2015-Ohio-2010, ¶ 14.

- 3 -

{¶ 9} "An accused has 'constructive possession' of an item when the accused is conscious of the item's presence and is able to exercise dominion and control over it, even if the item is not within the accused's immediate physical possession." *State v. Jester*, 12th Dist. Butler No. CA2010-10-264, 2012-Ohio-544, ¶ 25. Constructive possession may be proven by circumstantial evidence alone. *Williams* at ¶ 15. This is because "[c]ircumstantial and direct evidence are of equal evidentiary value." *State v. Frye*, 5th Dist. Richland No. 17CA5, 2017-Ohio-7733, ¶ 46, citing *State v. Jenks*, 61 Ohio St.3d 259, 272 (1991). "Absent a defendant's admission, the surrounding facts and circumstances, including the defendant's actions, are evidence that the trier of fact can consider in determining whether the defendant had constructive possession." *State v. Caudill*, 12th Dist. Madison No. CA2017-05-011, 2018-Ohio-550, ¶ 12.

{¶ 10} At trial, Officer Little, the lone witnesses to testify at trial, testified he received a call on the evening of March 11, 2017 informing him of a potential impaired driver near the intersection of Dayton Road and Edwards Drive. After receiving this call, Officer Little drove his police cruiser to that intersection where he observed a single car driving southbound from Dayton Road towards the corner of Edwards Drive and High Street. Officer Little testified he then watched as the car rolled through the stop sign located at the corner of Edwards Drive and High Street before turning westbound onto High Street. Upon observing this traffic violation, Officer Little activated his overhead lights and initiated a traffic stop of the vehicle.

{¶ 11} After initiating the traffic stop, Officer Little testified he became alarmed when the driver, later identified as Dewitt, opened the driver's side door and started walking back towards his cruiser in a "bladed or sidewise manner."[1] According to Officer Little, he

---

1. Officer Little later testified that a "bladed approach" is similar to a "sideways approach" where the individual stands at an angle.

became even more concerned upon realizing he did not have a good clear view of DeWitt's hands, DeWitt having them either in his pockets or at his belt. When asked why this caused him concern, Officer Little testified:

> My first concern, a bladed approach is something that we're instructed as a potential act of aggression. So I was worried about my safety. I was worried he might have had a weapon that he was trying to hide from my view.

{¶ 12} As Dewitt approached, Officer Little instructed DeWitt to stop and show his hands. DeWitt, however, did not stop. As a result, Officer Little again instructed DeWitt to stop and show his hands. DeWitt again did not stop. Finally, as Officer Little testified, "with my last command I started reaching for my weapon and at that time he stopped near the rear of his car." Officer Little then approached DeWitt and informed him that he had stopped him for running through a stop sign, to which DeWitt replied that "he was not even aware there was a stop sign there."

{¶ 13} Officer Little testified he then asked DeWitt where he was heading that night. In response, DeWitt replied that he was going to visit a "friend" who lived in a nearby apartment complex. DeWitt, however, could not identify his "friend" to Officer Little, nor could DeWitt provide Officer Little with his "friend's" address. Feeling something was amiss, Officer Little informed DeWitt that he was "suspicious" and that "his answers indicated that he was extremely nervous talking to me." To this, DeWitt admitted to Officer Little that he was driving without a valid driver's license. Officer Little then patted DeWitt down for his safety and placed DeWitt in the back of his cruiser. After placing DeWitt in his cruiser, Officer Little approached the car again and spoke with the female seated in the car's front passenger seat, A.T. According to Officer Little, A.T. was also "extremely nervous." Officer Little testified he then informed A.T. that he was "getting indicators that both of them were nervous to the extent that there might be contraband in the car."

{¶ 14} After speaking with A.T., Officer Little checked DeWitt's social security number over his police radio, which indicated DeWitt had an inactive driver's license, as well as six active license suspensions, and a warrant for his arrest. As Officer Little testified, "I knew at that time I would be taking him into custody, absolutely." Since all police radio traffic can be heard by other officers in the area, Officer Little testified he then received a message from a local deputy regarding DeWitt that "furthered [his] suspicion that there was possibly narcotics in general and methamphetamine in specific in the vehicle[.]"

{¶ 15} Officer Little then approached A.T. again and informed her that he was "getting many indicators of contraband in the car[.]" Officer Little further notified A.T. that he was "prepared to bring a canine out and advised her that if she was not being truthful to me previously, it was in her interest to be truthful to me now if [he] were to find that there was narcotics in the car that she was reasonable [sic] aware of." Officer Little then testified A.T. provided him with reason to search the area in and around the car for drugs. During this search, it is undisputed that Officer Little discovered two clear plastic baggies containing a total of 16.08 grams of methamphetamine, one "directly behind" where DeWitt had eventually stopped on the street after exiting the car, whereas the other was located on the floor between the car's door and the driver's seat. A further search of the car lead to the discovery of a glass pipe located on the floor behind the car's driver's seat, as well as a digital scale and a butane lighter behind the car's front passenger's seat. DeWitt denied having any knowledge of the drugs or drug paraphernalia.

{¶ 16} After a full and thorough review of the record, we find DeWitt's conviction for aggravated possession of drugs and possession of drug paraphernalia was not against the manifest weight of the evidence. DeWitt, however, claims his conviction must be reversed because the record is so "riddled with evidentiary holes" that it would be exceedingly problematic, if not impossible, to render a finding of guilt beyond a reasonable doubt. Yet,

the so-called "evidentiary holes" noted by DeWitt, which include, among others – the lack of evidence regarding the speed in which DeWitt took to walk to the back of the car after he exited the vehicle; the fact that Officer Little did not see DeWitt drop anything upon exiting the vehicle; that Officer Little's attention was divided between DeWitt and A.T. during much of the stop, thus leaving A.T. "free to dispose of the contraband in furtherance of her own interests;" that DeWitt would have needed to "awkwardly contort himself" to dispose of contraband behind the driver's seat where he had been sitting; the lack of evidence establishing that "the car belonged, was titled to, or was exclusively driven" by DeWitt, nor any direct evidence such as fingerprints or DNA evidence linking him to the drugs and drug paraphernalia – do not render this case "a textbook illustration of 'reasonable doubt'" as DeWitt suggests.  We in fact find the exact opposite to be true.

{¶ 17} Again, as the record indicates, following a traffic stop, Officer Little discovered two baggies containing 16.08 grams of methamphetamine, one "directly behind" where DeWitt had eventually stopped on the street after exiting the car, whereas the other was located on the floor between the door and the driver's seat, as well as a glass pipe, a digital scale, and butane lighter.  These items were all located in close proximity to DeWitt and well-within his constructive, if not actual, possession.  Moreover, although the record indicates DeWitt denied having any knowledge of the drugs and/or drug paraphernalia discovered by Officer Little in and around the car, based on the totality of the surrounding circumstances, the jury, as the finder of fact, determined that he did have such knowledge. The record fully supports this finding.

{¶ 18} Furthermore, while Dewitt claims that the jury could not ascertain whether the drugs and/or drug paraphernalia belong to him or to A.T., it is well-established that "the state need not establish ownership to prove constructive possession and two or more persons may have possession of an object together if they can control it, exclusive of

- 7 -

others." *Caudill*, 2018-Ohio-550 at ¶ 13, citing *State v. Weckner*, 12th Dist. Brown No. CA2001-06-009, 2002-Ohio-1012. That is exactly what occurred here. Therefore, finding DeWitt's conviction for aggravated possession of drugs and possession of drug paraphernalia was not against the manifest weight of the evidence, but rather, fully supported by the evidence presented at trial, DeWitt's argument that his conviction was against the manifest weight of the evidence is without merit. Accordingly, finding no merit to DeWitt's claim raised herein, DeWitt's single assignment of error is overruled.

{¶ 19} Judgment affirmed.

HENDRICKSON and M. POWELL, JJ., concur.