[Cite as *State v. Nazir*, 2019-Ohio-3424.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2018-12-146 |
| | : | O P I N I O N |
| - vs - | | 8/26/2019 |
| | : | |
| MUHAMMAD NAZIR, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 18CR34006

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Anzelmo Law, James A. Anzelmo, 446 Howland Drive, Gahanna, Ohio 43230, for appellant

**PIPER, J.**

{¶ 1}   Appellant, Muhammad Nazir, appeals his convictions in the Warren County Court of Common Pleas for domestic violence and disrupting public services.

{¶ 2}   Nazir and Sonia Saleem, who were married in Pakistan and immigrated to the United States, had three children.  In December 2017, Saleem was six months pregnant with the couple's fourth child when Nazir decided to marry a second wife in Pakistan.  The day

Nazir was to leave for the wedding in Pakistan, Saleem and the children went to her sister's home for a family gathering. Nazir appeared at the gathering and demanded that Saleem and the children return to their home. When Saleem refused, Nazir grabbed the oldest child and drove home with her.

{¶ 3} Saleem and the couple's other children returned to their home, and Nazir threatened to hit Saleem if she did not stop asking him questions about his departure. Nazir then demanded that Saleem give him any cash that she had. At that point, Nazir grabbed Saleem's face and neck tightly. Nazir also punched the pregnant Saleem in the stomach. Nazir pushed Saleem against the wall, causing a painful bump on her head. He also kicked her, causing Saleem to fall to the ground. Saleem was able to dial 9-1-1, but Nazir soon grabbed the phone, hung up, and walked away from Saleem.

{¶ 4} A 9-1-1 dispatcher returned the hang-up call and Nazir answered the phone, stating that there was no emergency before abruptly hanging up the phone. He then left for the airport. Saleem called 9-1-1 after Nazir left and reported the abuse and her injuries. Once officers arrived, they observed that Saleem was crying and visibly injured, including a knot on her head. Police called Nazir and asked him to return to discuss the incident, but Nazir refused the request and left for Pakistan.

{¶ 5} Approximately two months later, Nazir returned from Pakistan and tried to enter the home he had shared with Saleem and the children. Saleem called police and officers arrested Nazir for domestic violence. Nazir was indicted on one count of disrupting public services and two counts of domestic violence, with one count a felony because Saleem was pregnant at the time Nazir abused her.

{¶ 6} The matter proceeded to a jury trial, during which the state dismissed the misdemeanor count of domestic violence. The jury found Nazir guilty of the felony domestic violence charge and disrupting public services. The trial court sentenced Nazir to nine

- 2 -

months, which by the time of sentencing, Nazir had already served. Nazir now appeals his convictions, raising the following assignments of error. For ease of discussion, we will address Nazir's assignments of error out of order, and will combine two of his assignments of error because they are interrelated.

{¶ 7} Assignment of Error No. 2:

{¶ 8} MUHAMMAD NAZIR'S CONVICTIONS ARE BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1 & 16, ARTICLE I OF THE OHIO CONSTITUTION.

{¶ 9} Assignment of Error No. 3:

{¶ 10} MUHAMMAD NAZIR'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1 & 16, ARTICLE I OF THE OHIO CONSTITUTION.

{¶ 11} Nazir argues in his second and third assignments of error that his convictions are against the manifest weight of the evidence and not supported by sufficient evidence.

{¶ 12} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 13} A manifest weight of the evidence challenge examines the "inclination of the

greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. An appellate court will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Caudill*, 12th Dist. Madison No. CA2017-05-011, 2018-Ohio-550, ¶ 10.

{¶ 14} Nazir was convicted of disrupting public services in violation of R.C. 2909.04(A)(1), which provides,

> (A) No person, purposely by any means or knowingly by damaging or tampering with any property, shall do any of the following:
>
> (1) Interrupt or impair television, radio, telephone, telegraph, or other mass communications service; police, fire, or other public service communications; radar, loran, radio, or other electronic aids to air or marine navigation or communications; or amateur or citizens band radio communications being used for public service or emergency communications;

Nazir was also convicted of domestic violence in violation of R.C. 2919.25(A), which provides that no "person shall knowingly cause or attempt to cause physical harm to a family or household member." As noted earlier, this domestic violence charge was raised to a fifth-degree felony because Saleem was pregnant at the time of the abuse. R.C. 2919.25(D)(5).

{¶ 15} After reviewing the record, Nazir's convictions are supported by sufficient evidence and were not against the manifest weight of the evidence. Saleem testified that

she and Nazir were married in Pakistan and came to the United States where they lived together as a family with their children. At the time of the abuse, Saleem was six months pregnant and Nazir knew of her pregnancy.

{¶ 16} Saleem testified that on the night Nazir abused her, she had been at her sister's home for a family gathering. Nazir came and demanded that Saleem and the children leave with him and return home. During this time, Nazir was screaming, "causing a scene" and using abusive language toward Saleem and her family. Nazir then pulled the oldest child by her arm and took her to the car and left. At that point, Saleem's brother drove her and the remaining children home.

{¶ 17} Saleem testified that when she and the children entered the home, she observed luggage in the garage. When Saleem asked Nazir about the luggage, he threatened to hit her. Saleem took the children to the bedroom, and Nazir followed her and demanded that she give him any cash she had. When Saleem asked Nazir why he needed cash, he grabbed her face "really tight" so that she could not speak and then grabbed her neck, which for Saleem was "really painful." Saleem further testified that Nazir punched her in the stomach "really hard" and pushed her against the wall causing injury to her head. Nazir then kicked Saleem, and she fell to the ground. Saleem testified that after Nazir kicked her, she felt dizzy and blacked out for a few minutes.

{¶ 18} Once able, Saleem retrieved her phone and called 9-1-1. However, Nazir "snatched" the phone and hung up. Nazir then walked away and denied Saleem's request to call for medical help to treat her injuries and possible trauma to their unborn child. When the 9-1-1 dispatcher called Saleem's phone in response to Nazir hanging up the phone, Nazir told the dispatcher that there was no emergency and again hung up the phone.

{¶ 19} Eventually, Nazir threw Saleem's phone on the floor and left the house. Saleem then called 9-1-1 and reported her injuries. Police responded within minutes and

Saleem recounted the details of the abuse. She was also photographed, with the photograph depicting the injury to her head she sustained when Nazir pushed her into the wall.

{¶ 20} Saleem testified that approximately two months after Nazir beat her, he returned from Pakistan. During the time that Nazir was in Pakistan, Saleem learned from a relative that Nazir had married another woman.

{¶ 21} The state also presented testimony from an officer who responded to Saleem's 9-1-1 call on the night of the abuse. The officer testified that when he observed Saleem, she was injured and crying, and that she was taken to the hospital to have her injuries treated. The officer testified that he contacted Nazir on the night of the abuse and asked him to come back to the Mason Police Department for an interview. Although Nazir told the officer that he would return as requested, Nazir left for Pakistan instead.

{¶ 22} The officer further testified that approximately two months after that night, he received a dispatch that Nazir returned to the home he shared with Saleem and their children. The officer responded within moments and arrested Nazir for domestic violence. Immediately upon arresting him, Nazir demanded proof that he had hit his wife even though the officer never specified that the arrest was for hitting Saleem.

{¶ 23} When viewing this evidence in a light most favorable to the state, there is sufficient evidence to establish the elements of both charges. While Nazir testified in his own defense that he did not strike Saleem and that she was the abusive spouse in the relationship, the jury was free to judge the credibility of the witnesses and did not create a manifest miscarriage of injustice in determining that the state's witnesses were more credible. Nazir's second and third assignments of error are therefore, overruled.

{¶ 24} Assignment of Error No. 1:

{¶ 25} THE TRIAL COURT ERRED BY BARRING MUHAMMAD NAZIR FROM

INTRODUCING EVIDENCE MATERIAL TO HIS DEFENSE, IN VIOLATION OF HIS RIGHTS TO DUE PROCESS, UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1 & 16, ARTICLE I OF THE OHIO CONSTITUTION, AND HIS RIGHT TO A FAIR TRIAL, AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION.

{¶ 26} Nazir argues in his first assignment of error that the trial court erred by deeming certain evidence inadmissible.

{¶ 27} The admission or exclusion of evidence is a matter committed to the sound discretion of the trial court. *State v. Parker*, 12th Dist. Butler No. CA2017-12-176, 2019-Ohio-830. Absent an abuse of discretion, this court will not reverse the trial court's decision to admit or exclude relevant evidence. *Id.* An abuse of discretion connotes more than an error of law or judgment; it implies the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Gearhart*, 12th Dist. Warren No. CA2017-12-168, 2018-Ohio-4180, ¶ 13.

{¶ 28} Nazir first claims that the trial court erred by not admitting evidence from social media sources. Nazir proffered that the evidence would have demonstrated that Saleem told Nazir to "get lost" and that he was going "to pay" for his second marriage. Nazir also claims that he had text messages in which Saleem told Nazir's second wife that Saleem wanted Nazir to be deported, as well as witnesses who would testify about Nazir's second marriage. Lastly, Nazir claims that the trial court erred by not admitting the police report in which an officer mentioned that Saleem made a comment about wanting to teach Nazir a lesson.

{¶ 29} After reviewing the record, we find the trial court did not abuse its discretion in finding the evidence inadmissible and that the trial court's rulings did not prevent Nazir from having a fair trial or the ability to present a meaningful defense.

{¶ 30} The trial court properly denied admission of the social media exchanges and text messages because such were written in a different language. The record indicates that the trial court set a schedule for the defense to provide translations of the evidence so that the state could verify the accuracy of the translations. However, the defense did not produce translations according to the schedule, and the state was therefore unable to verify the evidence's accuracy. Thus, the trial court did not abuse its discretion in denying the admissibility of the social media exchanges and text messages.

{¶ 31} Nor did the trial court abuse its discretion in denying admission of a police report regarding a different instance of domestic violence between Nazir and Saleem. At a time prior to the incident in question, police responded when Nazir and Saleem had a disagreement that turned physical. During that instance, Saleem told officers that she called the police in part because she wanted to "teach [Nazir a] lesson so that he doesn't cheat on me again."

{¶ 32} The trial court properly determined that the report was inadmissible hearsay. *See State v. Smith*, 12th Dist. Butler No. CA2009-02-038, 2010-Ohio-1721, ¶ 101 ("police reports are generally considered to be inadmissible hearsay and should not be submitted to the jury"). However, the trial court permitted the officer who created the report to testify about his first-hand interaction with Nazir and Saleem on the night of that incident. The officer testified that he responded to the dispatch, spoke with Nazir and Saleem, and that they gave conflicting stories about what occurred. As such, and with a lack of witnesses or evidence of injuries, the officer did not charge either Nazir or Saleem with domestic violence.

{¶ 33} The officer testified that during his investigation, Saleem stated that she wanted to teach Nazir a lesson so that Nazir did not cheat on her.[1] Saleem also testified to the

---

1. The trial court determined that Saleem's statement to the officer was not hearsay because it was not being used for the truth of the matter asserted, but only for its effect on the listener. Neither party challenges this ruling.

incident and confirmed that she told the officer that she wanted to teach Nazir a lesson. As such, the defense was able to present the evidence regarding Saleem's possible motives by way of testimony, and the trial court did not err by denying the admission of the report itself.

{¶ 34} Finally, the trial court did not abuse its discretion in denying the defense's request to call a witness to testify about the pre-planned nature of Nazir's trip to Pakistan. Nazir proffered that if permitted, the witness would have testified that Nazir had asked for a ride to the airport prior to the night he abused Saleem, thus proving that he had planned the trip and did not flee because of the domestic violence. However, defense counsel did not provide the state with notice of the witness, and as such, the state had no opportunity to develop a meaningful cross-examination. Moreover, the record does not indicate in any way that the state's theory was that Nazir fled to avoid prosecution. As such, the witness was not necessary to refute a nonexistent assertion. Instead, the jury heard evidence that Nazir's trip to Pakistan was pre-planned, such as Saleem testifying that she saw luggage in the garage *prior to* Nazir abusing her.

{¶ 35} After reviewing the record, we find that the evidence was properly excluded. As such, Nazir's first assignment of error is overruled.

{¶ 36} Judgment affirmed.

RINGLAND, P.J., and M. POWELL, J., concur.