DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Carlos D. Figueroa, appeals from a judgment of the Summit County Court of Common Pleas, which found him guilty of drug possession and sentenced him accordingly. We affirm.
 I. {¶ 2} Two men, Mr. Figueroa and one Marcus Sims, were returning from Chicago in Sims' SUV with 27 lbs of marihuana. When the Akron police stopped them on Interstate 77, Sims was driving and Mr. Figueroa was in the front passenger seat. Upon approaching the vehicle, the first officer observed marihuana particles on Mr. Figueroa's shirt and therefore arrested him. The second officer observed a small bag of marihuana on the floor of the SUV and asked Sims for consent to search the rest of the vehicle. Sims consented and the police discovered the 27 lbs of marihuana in the back of the SUV.
 {¶ 3} The police arrested Sims and charged him with possession, but at that time released Mr. Figueroa uncharged. Sims subsequently offered to cooperate in exchange for leniency, and informed the police that Mr. Figueroa had funded the marihuana purchase and owned an undivided portion of the marihuana. Thereafter, the police arrested Mr. Figueroa and indicted him for possession of marihuana in violation of R.C. 2925.11(A), a third degree felony, and failure to appear in violation of R.C. 2937.29, a fourth degree felony. Mr. Figueroa pled not guilty and the case proceeded to a jury trial.
 {¶ 4} Sims testified for the State at Mr. Figueroa's trial, explaining that he had traveled to Chicago with Mr. Figueroa to purchase a large volume of marihuana from Mr. Figueroa's contacts there. Sims further explained that he had intended to sell the marihuana for profit, and that he had paid Mr. Figueroa $2,500 for the bulk purchase but still owed him $5,000 to $8,000 for the remainder. Accordingly, Sims explained, the marihuana belonged to both of the men.
 {¶ 5} The trial court granted Mr. Figueroa a judgment of acquittal on the failure to appear charge, but the jury convicted him of the possession charge. The trial court sentenced him to two years incarceration and $5,000 in fines. Mr. Figueroa timely appealed, asserting two assignments of error for review.
 II. A. First Assignment of Error
"The verdict was against the manifest weight of the evidence."
 {¶ 6} Mr. Figueroa alleges that a jury could not have believed the evidence produced at trial. Thus, Mr. Figueroa charges that the verdict was against the manifest weight of the evidence and should be reversed. We disagree.
 {¶ 7} Reversal on manifest weight grounds is reserved for the exceptional case where the evidence demonstrates that the "trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." State v. Otten (1986),33 Ohio App.3d 339, 340. Accord State v. Thompkins (1997),78 Ohio St.3d 380, 387. A conviction may be upheld even when the evidence is susceptible to some possible, plausible, or even reasonable theory of innocence. See State v. Jenks (1991), 61 Ohio St.3d 259, 272. Similarly, upon presentation of conflicting testimony, "a conviction is not against the manifest weight of the evidence simply because the [trier of fact] believed the prosecution testimony." State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4.
 {¶ 8} Mr. Figueroa was convicted of possession of marihuana, in violation of R.C. 2925.11(A). Possession need not be actual, but may be constructive. State v. Butler (1989), 42 Ohio St.3d 174, 176. Constructive possession occurs when a person knowingly exercises dominion or control over the item, even without physical possession. State v.Hankerson (1982), 70 Ohio St.2d 87, syllabus. As a higher level of control, actual ownership would certainly qualify as possession. SeeState v. Mann (1993), 93 Ohio App. 3d 301, 308; 4 Ohio Jury Instructions (2004), Section 409.50(5), at 64. "Possession of a drug includes possessing individually, or jointly with another person. Joint possession exists when two or more persons together have the ability to control an object, exclusive of others." State v. Alicea (Oct. 18, 2001), 8th Dist. No. 78940, at *17, citing 4 Ohio Jury Instructions (2004), Section 409.50(4), at 64. Furthermore, constructive possession may be inferred from the drugs' presence in a usable form and in close proximity to the defendant. State v. Thomas, 9th Dist No. 21251, 2003-Ohio-1479, at ¶ 11.
 {¶ 9} Mr. Figueroa insists that the greater amount of credible evidence supports his position, and as such, the jury clearly lost its way and created a manifest miscarriage of justice. In support of this position, Mr. Figueroa attacks the substance of the State's evidence adduced against him at trial, which came in three principal forms: wire tap tapes, police officer testimony, and Sims' testimony. Wire tap tapes of Mr. Figueroa's cell phone were produced at trial, and the content of those tapes documents certain of Mr. Figueroa's activities in both Chicago and Akron, in and around the time of the drug transaction and traffic stop. Mr. Figueroa accurately explains that the contents of those wire tap tapes, in and of themselves, prove no illegal activity. However, Mr. Figueroa overlooks the effect of such tapes to support the officers' testimony and substantiate Sims' version of the story.
 {¶ 10} The State offered the testimony of three police officers, who detailed their investigation of Mr. Figueroa prior to the traffic stop, the events of the traffic stop and their interaction with Sims thereafter. Mr. Figueroa urges that the testimony is inconclusive or unpersuasive as to his role in the drug possession, and insufficient to prove his culpability. While Mr. Figueroa may be correct that this testimony may be ambiguous or allow for alternative interpretations, such a finding is insufficient for reversal on a manifest weight review where we are guided by the presumption that the jury's interpretation was correct. See State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. In addition, as with the wire tap tapes, at a minimum this testimony serves to support Sims' account.
 {¶ 11} Finally, the State's principal evidence was the testimony of Sims, who explained that Mr. Figueroa coordinated the drug purchase and fronted the money, which Sims had not entirely repaid. Accordingly, Mr. Figueroa was a joint owner of the 27 lbs of marihuana, and thereby in constructive possession. See Alicia at *17; Thomas at ¶ 11. Mr. Figueroa alleges that Sims' testimony is false, and furthermore that Sims is simply not credible. However, it is worth noting that Sims did in fact testify at trial, before the jury, under oath and subject to cross-examination. The United States Supreme Court has expressed the significance of such an encounter as:
"thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; forc[ing] the witness to submit to cross-examination, the greatest legal engine ever invented for the discovery of truth; and permit[ting] the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.
"The combined effect of these elements of confrontation — physical presence, oath, cross-examination, and observation of demeanor by the trier of fact — * * * ensur[es] that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo-American criminal proceedings." (Internal citations, quotations and edits omitted.) Maryland v. Craig (1990), 497 U.S. 836, 846,111 L.Ed.2d 666.
As Mr. Figueroa recounts, Sims testified to the jury that he was a drug dealer, that he was testifying against Mr. Figueroa in exchange for leniency, and that his punishment had been reduced. Yet, the jury believed him anyway, and convicted Mr. Figueroa. As stated above, a conviction is not against the manifest weight of the evidence merely because the jury believed the State's version of the evidence. SeeGilliam at 4; DeHass, 10 Ohio St.2d at paragraph one of the syllabus.
 {¶ 12} Based on our review, we must conclude that Mr. Figueroa's criticisms of the State's evidence in this case are insufficient to find that the jury lost its way and created a manifest miscarriage of justice. See Otten, 33 Ohio App.3d at 340; Thompkins,78 Ohio St.3d at 387. Rather, we find it reasonable that the jury believed the State's version of the events, and convicted Mr. Figueroa accordingly. We conclude that the conviction for drug possession is not against the manifest weight of the evidence. This assignment of error is overruled.
 B. Second Assignment of Error
"The trial court failed to make the requisite statutory findings on the record to support sentencing the defendant, let alone to more than a minimum sentence for his conviction for possession of marihuana."
 {¶ 13} Mr. Figueroa asserts that the trial court erred by failing to justify his sentence under the statutory standard, both in imposing incarceration and in deviating from the minimum sentence, and therefore his sentence should be vacated. We disagree.
 {¶ 14} The crux of Mr. Figueroa's argument, as it is presented in his brief, is that the evidence does not support his sentence. This Court may not disturb a sentencing decision unless clear and convincing evidence demonstrates that the sentence is either unsupported by the record or is contrary to law. R.C. 2953.08(G)(2); State v. Yeager, 9th Dist. No. 21092 21107, 2003-Ohio-1809, at ¶ 5. Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford
(1954), 161 Ohio St. 469, paragraph three of the syllabus. Therefore, an appellant's burden is to identify clear and convincing evidence from the entire record, that the record cannot support the sentence. See App.R. 16(A)(7); Loc.R. 7(A)(7). This, Mr. Figueroa has failed to do.
 {¶ 15} In the present case, the trial court determined that Mr. Figueroa was not amenable to community control and that incarceration would be consistent with the purposes of R.C. 2929.11. Furthermore, the court stated: "The [trial court] has considered the record, oral statements, as well as the principles and purposes of sentencing under O.R.C. 2929.11, and the seriousness and recidivism factors under O.R.C.2929.12." The court possessed sufficient evidence to conclude that something less than the term imposed would demean the seriousness of the conduct or inadequately protect the public from future crime. See R.C.2929.14. In making such a conclusion, a court considers the factors enumerated in R.C. 2929.12 as well as "any other relevant factors." R.C.2929.12(B)-(E).
 {¶ 16} The evidence adduced at trial showed that Mr. Figueroa was engaged in an organized activity to obtain a large quantity of marihuana, transport it across state lines, and distribute it in the Akron area. See R.C. 2929.12(B)(7). Mr. Figueroa has out of state drug contacts, arranged the purchase of 27 lbs of marihuana, and transported that marihuana back to Akron. Furthermore, Mr. Figueroa expressed no remorse for his offense. See R.C. 2929.12(D)(5). While we would prefer that the trial court be more precise in drafting its judgment entries, we do not find the record in this case so devoid of evidence, or otherwise partial to the defendant, that the bases for the sentence cannot be reasonably identified.
 {¶ 17} We conclude that because there was sufficient evidence for the trial court to make the required findings to impose the specified incarceration, this Court cannot clearly and convincingly find that the record does not support the sentencing findings under R.C. 2929.14(E)(4) or that the sentence is contrary to law. Accordingly, Mr. Figueroa's assignment of error is overruled.
 III. {¶ 18} Mr. Figueroa's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J. Concurs.