[Cite as *State v. Myles*, 2020-Ohio-3323.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                   CASE NO.  9-19-74

      v.

JOHNQUEZ MYLES,                       O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No. 19-CR-131

Judgment Affirmed

Date of Decision:   June 15, 2020

APPEARANCES:

    *Todd A. Anderson* for Appellant

    *Nathan R. Heiser* for Appellee

**SHAW, P.J.**

{¶1} Defendant-appellant, Johnquez Myles ("Myles"), appeals the October 17, 2019 judgment of the Marion County Court of Common Pleas, journalizing his conviction by a jury for one count of felony possession of cocaine and one count of felony possessing criminal tools, and sentencing him to an aggregated prison term of thirty-six months. On appeal, Myles challenges several aspects of the jury trial underlying his convictions in addition to the imposition of the trial court's sentence.

*Procedural History*

{¶2} On April 4, 2019, the Marion County Grand Jury returned a three-count indictment against Myles charging him with Count One: Trafficking in Cocaine, in violation of R.C. 2925.03(A)(2), (C)(4), a felony of the fourth degree; Count Two: Possession of Cocaine, in violation of R.C. 2925.11(A), (C)(4), a felony of the fourth degree; and Count Three: Possessing Criminal Tools, in violation of R.C. 2923.24(A), a felony of the fifth degree. The charges arose from a residence check conducted by an Adult Parole Authority ("APA") officer on a parolee, an individual who was not Myles. The parole officer encountered Myles as the sole occupant of the home. Myles initially indicated to the parole officer that he resided in the home, sleeping on the couch in the living room, but later in their conversation denied his residence at the home. During a search of the home, the parole officer found a digital scale coated with a white powdery residue, plastic baggies, over a $100 in

cash, and three cell phones in the living room, the area where Myles had initially admitted to living. Further search of the home revealed a plastic baggy with suspected cocaine hidden in a mounted ceiling light fixture in another room. Myles entered a plea of not guilty to the charges.

{¶3} During discovery, it came to light that Myles himself was on postrelease control at the time of his encounter with the parole officer.

{¶4} On September 24 and 25, 2019, the trial court held a jury trial. The parole officer who conducted the search of the residence and the drug task force detective who collected the evidence found at the home testified on behalf of the prosecution. The parties stipulated to the results of the BCI report confirming that the substance found in the plastic baggy was 5.18 grams of cocaine. Myles did not present any testimony in his defense. During the jury trial, Myles' counsel moved for a mistrial based upon the parole officer mistakenly referring to Myles as the "offender" on four occasions. The trial court overruled the mistrial motion and provided a curative instruction to the jury. The jury returned a not guilty verdict on the trafficking in cocaine charge and guilty verdicts on the possession of cocaine and possessing criminal tools charges.

{¶5} On October 17, 2019, Myles appeared for sentencing. The trial court imposed a fourteen-month prison term on the fourth-degree felony possession of cocaine conviction and a ten-month prison term on the fifth-degree felony

possessing criminal tools conviction. The trial court also imposed an additional twelve-month prison term as a judicial sanction for Myles violating his postrelease control as a result of him committing the underlying felony offenses. *See* R.C. 2929.141. The trial court ordered the prison terms to run consecutively for an aggregated total of thirty-six months in prison.

{¶6} Myles filed this appeal, asserting the following assignments of error.

**ASSIGNMENT OF ERROR NO. 1**

**THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO DECLARE A MISTRIAL.**

**ASSIGNMENT OF ERROR NO. 2**

**THE TRIAL COURT ERRED IN DENYING MR. MYLES' CRIMINAL RULE 29 MOTION FOR ACQUITTAL.**

**ASSIGNMENT OF ERROR NO. 3**

**SUFFICIENT EVIDENCE DID NOT SUPPORT THE JURY'S VERDICT.**

**ASSIGNMENT OF ERROR NO. 4**

**THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

**ASSIGNMENT OF ERROR NO. 5**

**THE TRIAL COURT ERRED AS A MATTER OF LAW IN SENTENCING MR. MYLES TO TWELVE MONTHS IN PRISON UNDER R.C. 2929.141 BECAUSE MR. MYLES' PRIOR SENTENCE IS VOID.**

**ASSIGNMENT OF ERROR NO. 6**

**THE TRIAL COURT ERRED IN ORDERING MR. MYLES TO SERVE AN ADDITIONAL 12 MONTHS IN PRISON UNDER R.C. 2929.141 BECAUSE MR. MYLES HAD ALREADY COMPLETED HIS POST-RELEASE CONTROL AT THE TIME OF SENTENCING.**

**ASSIGNMENT OF ERROR NO. 7**

**MR. MYLES RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.**

**ASSIGNMENT OF ERROR NO. 8**

**THE TRIAL COURT ERRED BY FAILING TO MERGE THE POSSESSION OF COCAINE AND POSSESSION OF CRIMINAL TOOLS CONVICTIONS.**

{¶7} For ease of discussion, we elect to address some of the assignments together and out of order.

*Second, Third, and Fourth Assignments of Error*

{¶8} In these assignments of error, Myles claims that the trial court erred when it overruled his Crim.R. 29 motion for acquittal and challenges the sufficiency of the evidence supporting his convictions. Myles also contends that his convictions were against the manifest weight of the evidence.

*Standard of Review*

{¶9} An appellate court reviews a denial of a Crim.R. 29 motion for acquittal using the same standard used to review a sufficiency of the evidence claim. *See State v. Carter*, 72 Ohio St.3d 545, 553, 1995-Ohio-104. An appellate court's function

when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus; *State v. Pountney*, 152 Ohio St.3d 474, 2018-Ohio-22, ¶ 19 (an appellate court's function in a sufficiency review is not to determine if the evidence should be believed). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, ¶ 317. "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33; *see also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997) ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence.").

{¶10} In reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52. In doing

so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id*.

{¶11} Nevertheless, a reviewing court must allow the trier-of-fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Controlling Statutes*

{¶12} The jury convicted Myles of one count of fourth-degree felony possession of cocaine, in violation of R.C. 2925.11(A), (C)(4), which provides that:

> **(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.**
> **\* \* \***
> **(B) Whoever violates division (A) of this section is guilty of one of the following:**
> **\* \* \***
> > **(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty**

Case No. 9-19-74

> **of possession of cocaine. The penalty for the offense shall be determined as follows:**
>
> * * *
>
> > **(b) If the amount of the drug involved equals or exceeds five grams but is less than ten grams of cocaine, possession of cocaine is a felony of the fourth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.**

R.C. 2925.11(A), (C)(4).

{¶13} The jury also convicted Myles of fifth-degree felony possessing criminal tools, in violation of R.C. 2923.24, which states that:

> **(A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally.**
>
> **(B) Each of the following constitutes prima-facie evidence of criminal purpose:**
>
> > **(1) Possession or control of any dangerous ordnance, or the materials or parts for making dangerous ordnance, in the absence of circumstances indicating the dangerous ordnance, materials, or parts are intended for legitimate use;**
> >
> > **(2) Possession or control of any substance, device, instrument, or article designed or specially adapted for criminal use;**
> >
> > **(3) Possession or control of any substance, device, instrument, or article commonly used for criminal purposes, under circumstances indicating the item is intended for criminal use.**
>
> **(C) Whoever violates this section is guilty of possessing criminal tools. Except as otherwise provided in this division, possessing criminal tools is a misdemeanor of the first degree. If the**

-8-

**circumstances indicate that the substance, device, instrument, or article involved in the offense was intended for use in the commission of a felony, possessing criminal tools is a felony of the fifth degree.**

R.C. 2923.24.

*Evidence Adduced at Trial*

**{¶14}** At trial, the prosecution presented the testimony of APA parole officer, Chase Bass ("Bass"). Bass testified that on the afternoon of October 25, 2018, he traveled to 162 North Seffner Avenue in Marion looking for an individual named Michael Austin, who was under his supervision and had a felony warrant. Bass explained that he had previously met Austin at that residence. Bass was accompanied by four other people from the probation department, who were also supervising Austin and another individual living in the upstairs apartment. Two of the probation officers secured the back of the residence, while one checked the upstairs apartment.

**{¶15}** Bass approached the residence and knocked on the front door that was connected to the kitchen. As he knocked, Bass observed a tall, slender male similar to Myles' stature quickly exit the kitchen and enter the adjacent living room. Bass knocked again and approximately 90 seconds later the individual answered the door. Bass recognized the individual as Myles from having prior interactions with him. Bass inquired of Myles if Austin was in the residence. Myles indicated Austin was

not in the home. Myles granted Bass permission to enter the residence to search for Austin.

{¶16} Bass asked Myles if he lived in the home. Myles informed Bass that "he was living there and that they were moving furniture into the home, in the process of moving in." (Tr. at 149). Myles indicated to Bass that he was staying in the living room, sleeping on the couch. Bass and the other probation officers conducted a "sweep" of the residence and confirmed that there was no one else in the home besides Myles. (Tr. at 150). Bass continued to ask Myles for more details about his living situation in the home. According to Bass, Myles then stated "Oh, I don't live here." (Tr. at 154). Myles indicated that his brother lived in the home. Myles retrieved a copy of the lease for the home, which indicated that Myles' brother was the named tenant. Bass recalled that Myles claimed to only use the place as "a bachelor pad where he smashes his hos, " which Bass explained is a "street term" for "bringing females back to have sex." (Id.).

{¶17} Bass testified that he noticed "red flags" during his interaction with Myles; specifically, Myles' delay and movement from room to room before answering the door, and Myles' inconsistent answers regarding his residence at the home. (Tr. at 155). He explained this raised his suspicion that Myles was trying to hide something, such as weapons or drugs. Bass stated that he called his supervisor and was given authority to detain Myles and search the home. In a storage

compartment in the couch in the living room, which Myles indicated he was sleeping on, Bass found a digital scale with white powdery residue on the measuring component and a box for the scale. Bass recalled that the scale was found out of the box. Bass explained that in his experience digital scales are used in illegal drug activity. As Bass continued his search, he found on the coffee table by the couch Myles' state-issued I.D. with a different address listed.

{¶18} In addition, Bass also found a piece of mail from Columbia Gas company addressed to Myles at 162 North Seffner Avenue, the residence at issue, plastic baggies, money, and three cell phones. Bass recalled that one of the cell phones was located in plain view on the table in front of the couch where the scale was found. He could not recall where the second phone was located. The third cell phone was plugged into a stereo system in the living room and was receiving multiple, audible notifications during the search. Myles gave Bass a password, which unlocked two of the cell phones. Bass testified that in his experience, the use of multiple cell phones is indicative of illegal drug activity. Bass stated that the scale with the white powdery residue and the cell phones prompted him to look for possible illegal drugs in the home.

{¶19} As he continued to search the home, Bass entered a room off the hallway connecting the living room. He put his flashlight up to the light fixture mounted to the ceiling and noticed a shadow inside. Bass explained that in his

experience, such light fixtures are "a common area where people store drugs at to hide." (Id. at 203). Bass reached into the light fixture and pulled out a plastic baggy containing a white powdery substance. At that point, Bass contacted the MARMET drug task force, secured the items on the kitchen counter, and waited for assistance.[1] Bass further testified that he drove past the residence a month after this incident and observed Myles entering the home with a group of females.

{¶20} Detective Lowe of the Marion Police Department also testified for the prosecution and stated that he is assigned to the MARMET drug task force. He recalled that on October 25, 2018, he received a phone call from Bass regarding suspected drugs inside the residence at 162 North Seffner Avenue. Det. Lowe observed three cell phones, plastic baggies, cash, and a digital scale, which were placed on the kitchen counter by Bass. He confirmed that these items are commonly used in drug trafficking. Det. Lowe observed the white powdery residue on the digital scale. He further recalled observing the piece of mail from Columbia Gas company addressed to Myles at the 162 North Seffner Avenue address and Myles' state-issued I.D. in the home.

{¶21} Det. Lowe did not search the house, but collected the digital scale for evidence, along with the plastic baggy containing the white powdery substance found in the light fixture. He explained that the contents in the plastic baggy were

---

[1] The prosecution admitted as evidence several photographs that Bass took of the items found in the home.

sent to BCI for testing, but that the digital scale, the white powdery substance on the scale, and the plastic baggy itself were not tested for fingerprints or DNA because "BCI will not test for DNA on an item that is on a nonviolent crime, such as drug possession." (Tr. at 232).

{¶22} Det. Lowe testified that the BCI results from testing the white powdery substance found in the light fixture indicated that it was 5.18 grams of cocaine. Notably, the parties stipulated to the results and the admissibility of the BCI report at trial. He also recalled reading the lease indicating that Myles' brother had leased the residence. Det. Lowe testified that based on his experience, individuals involved in illegal drug activity may not have a lease in his or her name and may have access to multiple houses at a given time.

*Crim.R. 29 Motion: Sufficiency of the Evidence*

{¶23} On appeal, Myles argues that the prosecution failed to present sufficient evidence to establish that he knowingly possessed the cocaine and purposefully possessed the digital scale found in the home. Myles claims that there was inadequate evidence to prove beyond a reasonable doubt that he was in possession of those items because he told Bass that he did not live in the home and the items were not found within his immediate physical control.

*Relevant Authority*

**{¶24}** " 'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "Possession of drugs can be either actual or constructive." *State v. Bustamante*, 3d Dist. Seneca Nos. 13-12-26, 13-13-04, 2013-Ohio-4975, ¶ 25; *State v. Haynes*, 25 Ohio St.2d 264 (1971). " 'A person has "actual possession" of an item if the item is within his immediate physical possession.' " *Id.*, quoting *State v. Williams*, 4th Dist. Ross No. 03CA2736, 2004-Ohio-1130, ¶ 23. "A person has 'constructive possession' if he is able to exercise dominion and control over an item, even if the individual does not have immediate physical possession of it." *Id.*, citing *State v. Hankerson*, 70 Ohio St.2d 87 (1982).

**{¶25}** "For constructive possession to exist, '[i]t must also be shown that the person was conscious of the presence of the object.' " *Bustamante*, *supra*, quoting *Hankerson* at 91. "The State may prove the existence of the various elements of constructive possession of contraband by circumstantial evidence alone." *Id.*, citing *State v. Stewart*, 3d Dist. Seneca No. 13-08-18, 2009-Ohio-3411, ¶ 51. *See also Jenks*, 61 Ohio St.3d at 272-73. Therefore, "[a]bsent a defendant's admission, the surrounding facts and circumstances, including the defendant's actions, are evidence that the trier of fact can consider in determining whether the defendant had

constructive possession." *State v. Voll*, 3d Dist. Union No. 14-12-04, 2012-Ohio-3900, ¶ 19.

{¶26} In the instant case, Myles argues that there was insufficient evidence to establish he exercised dominion and control over the contraband found in the home in order to constitute constructive possession. Specifically, Myles argues the prosecution failed to demonstrate that he possessed the items because he denied residing at the home and the residential lease indicated that his brother was the tenant. Thus, Myles contends that the prosecution failed to establish that the items in the home belonged to him.

{¶27} It is well-established that exclusive access to the item need not be established in order to constructively possess contraband. *State v. Reed*, 6th Dist. Erie Nos. E-18-017, E-18-018, 2020-Ohio-138, ¶ 67; *see also State v. Dewitt*, 12th Warren No. CA2017-08-123, 2018-Ohio-1892, ¶ 18 (stating that "the State need not establish ownership to prove constructive possession and two or more persons may have possession of an object together if they can control it, exclusive of others"); *State v. Figueroa*, 9th Dist. Summit No. 22208, 2005-Ohio-1132, ¶ 8 (possession of drugs, for purposes of R.C. 2925.11(A), includes both individual and joint possession). Therefore, the possibility that the home may have been leased by his brother or that someone else also had access to the home is not dispositive of the constructive possession issue.

{¶28} Moreover, even though "a defendant's mere proximity to drugs is in itself insufficient to establish constructive possession, proximity to the drugs may constitute some evidence of constructive possession." *State v. Brown*, 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, ¶ 20. "Therefore presence in the vicinity of contraband, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession." *Id*.

{¶29} Here, Bass testified that Myles engaged in suspicious behavior before he answered the door; specifically Bass observed Myles move quickly from the kitchen to the adjacent living room before opening the front door some 90 seconds later. Upon Bass informing Myles of his reason for the visit—i.e., to make contact with Michael Austin—Myles indicated to Bass that he resided in the home, sleeping on the couch in the living room. It was only after Bass became more suspicious of Myles and began to probe further that Myles then denied residing in the home. Myles nevertheless admitted to having regular access to the home to entertain women. This was confirmed by Bass' testimony that he observed Myles entering the residence a month later with a group of women.

{¶30} Additionally, the digital scale, the cell phones, and the I.D. were all found in the immediate vicinity of the couch in the living room, where Myles initially claimed to have stayed. Moreover, it is undisputed that Myles was the only occupant in the home at the time of the search. Bass testified that the scale was

found in a storage compartment in the couch, out of the box and coated in white powdery residue. These factors are probative of recent use. Myles further demonstrated to Bass that he had access to two of the cell phones by providing the passcode to unlock them. Bass testified that the third cell phone was plugged into a stereo system and receiving multiple notifications throughout the search. With no one else found in the home, a rational factfinder could reasonably infer Myles exercised dominion and control over the all three cell phones. The discovery of the digital scale in the vicinity where Myles initially claimed to have stayed and the delay in Myles answering the door further support the inference that Myles was conscious of the presence of the contraband in the home and had the opportunity to hide it prior to encountering Bass.

{¶31} Myles also argues that the State failed to present sufficient evidence for a jury to determine that he had possession of the contraband because no fingerprint or DNA testing was performed on the plastic baggy or the digital scale. As previously discussed, constructive possession need not be proved by direct evidence.

{¶32} Circumstantial evidence and direct evidence possess the same probative value, and therefore circumstantial evidence, like direct evidence, can support a finding of proof beyond a reasonable doubt if the trier of fact so finds. *Jenks*, 61 Ohio St.3d 259, 272 (1991). Circumstantial evidence is proof of a fact

from which the existence of other facts reasonably may be inferred. *Id.* Moreover, a conviction based solely on circumstantial evidence is no less sound than one based on direct evidence. *State v. McDonald*, 8th Dist. Cuyahoga No. 105276, 2018-Ohio-484, ¶ 31, citing *State v. Apanovitch*, 33 Ohio St.3d 19 (1987). Indeed, a conviction based upon purely circumstantial evidence may be just as reliable as a conviction based on direct evidence, if not more so. *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6 (1960), citing *Rogers v. Missouri Pacific RR. Co.*, 352 U.S. 500, 77 S.Ct. 443 (1957).

{¶33} In this case, the record establishes that the State presented other evidence sufficient for the jury to believe by the requisite standard of proof that Myles constructively possessed the cocaine and digital scale. Therefore, in construing the evidence in the light most favorable to the State, we find that any rational trier of fact could have found that Myles exercised dominion and control of the items found in the home in order to establish sufficient evidence of constructive possession. Accordingly, we find no error in the trial court's decision to overrule Myles' Crim.R. 29 motion.

*Manifest Weight of the Evidence*

{¶34} Myles argues that the jury's verdicts were against the manifest weight of the evidence. Myles reiterates his arguments that the prosecution failed to prove that he constructively possessed the cocaine and digital scale. Myles' primary

contention is the purported lack of evidence that he lived in the home. As already discussed, Myles provided conflicting information to Bass regarding his connection to the home. Even assuming *arguendo* that the jury only believed Myles' second statement regarding his use of the home to entertain his female companions, this limited use of the home does not preclude a reasonable inference that Myles exercised dominion and control over the contents found in the home at the time Bass conducted his search.

{¶35} Myles also points to the fact that Bass testified to a lack of personal items being found in the home. However, consistent with Myles' initial statement, Bass also stated that it appeared as if the occupants were in the process of moving in. Notably, the residential lease indicated that the terms of the lease began on October 15, ten days prior to Bass' visit to the home. Moreover, Det. Lowe of the drug task force testified that it is not unusual for individuals involved in illegal drug activity to have access to several different houses so they cannot be easily tracked. Based upon these facts, in addition to the evidence detailed above, the jury could have reasonably inferred that Myles had dominion and control over the items in the home even absent evidence establishing that Myles actually lived in the home. Notably, even though Myles denied living in the home, he also failed to provide Bass with another address where he claimed to have resided, notwithstanding the presence of an I.D. card indicating another address.

{¶36} Furthermore, we find the divergent verdicts in the instant case supports the conclusion that the jury critically weighed the testimony and evidence, accepting some and rejecting others. Thus, we cannot say the jury lost its way in finding Myles guilty of possession of cocaine and possessing criminal tools. Accordingly, we conclude that Myles' convictions were not against the manifest weight of the evidence. Based on the foregoing discussion, we overrule the second, third, and fourth assignments of error.

## *First Assignment of Error*

{¶37} In his first assignment of error, Myles argues that the trial court erred in failing to declare a mistrial after Bass referred to Myles as the "offender" on four occasions instead of referring to him as the "defendant." Specifically, Myles claims that Bass' reference to him as the "offender" improperly alerted the jury to the fact that Myles was on parole at the time of the incident in violation of the trial court's ruling not to disclose Myles' parole status to the jury. Myles further argues that the trial court's curative instruction was insufficient to remedy any prejudice he sustained as a result of the error.

## *Standard of Review*

{¶38} As the trial court is in the best position to determine whether circumstances warrant a mistrial, a trial court's order granting or denying a request for a mistrial is reviewed for abuse of discretion. *State v. Griffin*, 10th Dist. Franklin

No. 10AP-902, 2011-Ohio-4250, ¶ 13; *State v. Glover*, 35 Ohio St.3d 18, 19 (1988). An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991). "A mistrial should not be ordered in a cause simply because some error has intervened. The error must prejudicially affect the merits of the case and the substantial rights of one or both of the parties." *State v. Loomis*, 10th Dist. Franklin No. 17AP-843, 2019-Ohio-2576, ¶ 24, citing *Tingue v. State*, 90 Ohio St. 368 (1914), paragraph three of the syllabus.

*Discussion*

{¶39} The record reflects that prosecution witness, Chase Bass, an APA parole officer, referred to Myles as the "offender" four times during his testimony at trial. Defense counsel objected to the first instance Bass used the term "offender" to refer to Myles. At that time, the trial court held a sidebar discussion with counsel and instructed Bass to refer to Myles "by name or by the term 'the defendant' ". (Tr. at 163). Bass continued with his testimony and referred to Myles as the "offender" on three more occasions, but quickly corrected himself and apologized. Defense counsel continued to object. The prosecutor attempted to clarify the situation.

**Prosecutor:  You use the term "offender" quite a bit?**

**Bass: Yeah, I do.  It's a term that's in my everyday use of terms.**

**Prosecutor: Yeah.  You're not accusing anybody of anything?**

**Bass: No, I am not.  I'm not.**

(Tr. at 170-171).

**{¶40}** Shortly thereafter, defense counsel moved for a mistrial based upon Bass' continued use of the term "offender" to refer to Myles after the trial court's admonishment.  The trial court overruled the motion, finding the declaration of a mistrial unnecessary based upon Bass' apparent inadvertence in using the term.  The trial court also determined that based upon the testimony given thus far the jury had not made any connection that offender "is a term that the APA used for someone under their supervision."  (Tr. at 176).

**{¶41}** The trial court decided to provide a curative instruction to the jury.

**Okay. Ladies and gentlemen of the jury, I am instructing you to disregard this witness's misuse of the term "offender."  He's been instructed, when referring to this defendant, to refer to him as either "the defendant" or "Mr. Myles," by his name.  The mere fact that this witness refers to someone as an offender should not be considered by you as evidence that this defendant, Mr. Myles, had committed any offense.  Thank you.**

(Tr. at 177).

**{¶42}** On appeal, Myles contends that Bass' use of the term "offender" was highly prejudicial because it improperly alerted the jury that he was on parole at the

time of the offense, and therefore biased the jury against him. Myles further points to the portion of the record indicating that at one point during deliberation the jury claimed they were "deadlocked" and asserts that Bass' reference to him as the "offender" "likely tipped the scales in favor of conviction." (Appt. Brief at 11).

**{¶43}** In determining whether a defendant was deprived of a fair trial, we must inquire whether, absent the error or irregularity, " 'the jury would have found the appellant guilty beyond a reasonable doubt.' " *State v. Junod*, 3d Dist. Mercer No. 10-18-08, 2019-Ohio-743, ¶ 44, quoting *State v. Morris*, 10th Dist. Franklin Nos. 18AP-208 and 18AP-209, 2018-Ohio-5252, ¶ 44, citing *State v. Maurer*, 15 Ohio St.3d 239, 267 (1984). "To determine whether the error resulted in prejudice, we must consider (1) the nature of the error, (2) whether an objection was made, (3) whether the trial court provided corrective instructions, and (4) the strength of the evidence against the defendant." *Id.*, citing *Morris* at ¶ 44.

**{¶44}** Moreover, "[c]urative instructions are presumed to be an effective way to remedy errors that occur during trial." *State v. Brown*, 10th Dist. Franklin No. 15AP-935, 2016-Ohio-7944, ¶ 21, citing *State v. Treesh*, 90 Ohio St.3d 460, 480 (2001). "As an appellate court, we must presume that the jury followed the trial court's instructions." *Brown* at ¶ 18, citing *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 39.

{¶45} Myles directs us to no evidence in the record that the jury disregarded the trial court's instruction pertaining to Bass' misuse of the term offender. Moreover, Myles' belief that Bass' misstatements were responsible for the jury ultimately reaching guilty verdicts in two of the three charges is pure speculation. In our view, the curative instruction given by the trial court in this case was sufficient to ameliorate any risk of jury impartiality that may have arisen from Bass' four references to Myles as "offender," which could have just as easily been construed as the individual accused of being an offender in the present case only, and we perceive no unfair prejudice to Myles on this basis. Accordingly, we conclude the trial court did not abuse its discretion when it denied Myles' request for a mistrial.

*Fifth, Sixth, and Seventh Assignments of Error*

{¶46} In these assignments of error, Myles argues that the trial court erred when it imposed a twelve-month prison term as a judicial sanction pursuant to R.C. 2929.141 for Myles' violation of postrelease control in committing the underlying felony offenses. Specifically, Myles contends that at the time of sentencing in the instant case he had completed his term of postrelease control. Myles further maintains that the judgment entry sentencing for him for a prior felony offense is "void" because it failed to properly impose postrelease control. For both of these reasons, Myles argues that the trial court erred when it imposed an additional

judicial sanction under R.C. 2929.141. Myles further claims that he received ineffective assistance of counsel when trial counsel failed to raise these issues at sentencing.

*Controlling Statute*

**{¶47}** At sentencing the trial court imposed a twelve-month prison term as a judicial sanction for Myles violating his postrelease control. Section 2929.141 of the Revised Code authorizes the trial court impose a judicial sanction of this nature and states in relevant part:

> **(A)** *Upon the conviction of or plea of guilty to a felony by a person on post-release control at the time of the commission of the felony,* **the court may terminate the term of post-release control, and the court may do either of the following regardless of whether the sentencing court or another court of this state imposed the original prison term for which the person is on post-release control:**
>
>> **(1)** *In addition to any prison term for the new felony, impose a prison term for the post-release control violation. The maximum prison term for the violation shall be the greater of twelve months or the period of post-release control for the earlier felony minus any time the person has spent under post-release control for the earlier felony.* **In all cases, any prison term imposed for the violation shall be reduced by any prison term that is administratively imposed by the parole board as a post-release control sanction.** *A prison term imposed for the violation shall be served consecutively to any prison term imposed for the new felony. The imposition of a prison term for the post-release control violation shall terminate the period of post-release control for the earlier felony.*
>>
>> **(2)** **Impose a sanction under sections 2929.15 to 2929.18 of the Revised Code for the violation that shall be served**

**concurrently or consecutively, as specified by the court, with
any community control sanctions for the new felony.**

R.C. 2929.141 (emphasis added).

{¶48} Myles claims that the trial court erred when it imposed the judicial sanction upon him under R.C. 2929.141 because he had completed his term of postrelease control at the time of sentencing. Under R.C. 2929.141, "the pivotal consideration is whether appellant was on post-release control at the time he committed the present crime." *State v. Bever*, 11th Dist. Lake No. 2010-L-022, 2010-Ohio-6443, ¶ 27; *see also*, *State v. Berry III*, 5th Dist. Delaware No. 06-CAA-10-0079, 2007-Ohio-4242, ¶ 16. Thus, the relevant inquiry here is whether Myles was on postrelease control *when he committed the new felony offenses*. It is undisputed by the parties that Myles was on postrelease at the time the underlying felonies were committed.

{¶49} Notably, Myles has failed to direct our attention to any authority supporting his position that completion of postrelease control prior to sentencing deprives the trial court of its authority to impose a judicial sanction under R.C. 2929.141. Rather, the case law cited by Myles simply addresses the calculation of time *remaining on postrelease control* at sentencing when the court terminates postrelease control and imposes a prison sentence for the postrelease control violation. *See*, *State v. Evilsizor*, 2d Dist. Champaign Nos. 2017-CA-1, 2017-CA-10, 2018-Ohio-3599. The record demonstrates that the trial court was not required to

calculate of time remaining on Myles' postrelease control, as the statute alternatively permits the trial court to impose a prison term of up to twelve months as the judicial sanction.

{¶50} Specifically, R.C. 2929.141 authorizes the trial court to impose a "maximum prison term for the violation" which is defined as the "greater of twelve months *or* the period of postrelease control for the earlier felony minus any time the person has spent under post-release control for the earlier felony." R.C. 2929.141 (emphasis added). Here, the trial court elected to impose a judicial sanction of twelve months, which was clearly within the authority conferred to it by the statute. Accordingly, we find no merit to Myles' assertion that the trial court erred when it imposed the twelve-month judicial sanction for his violation of postrelease control pursuant to R.C. 2929.141.

{¶51} Myles also argues that the sentencing judgment entry from his prior felony case failed to properly imposed postrelease control. Specifically, Myles asserts that, *in that case*, the trial court failed to advise him that a sanction imposed under R.C. 2929.141 for violating postrelease control must be served consecutive to any prison term imposed for a new felony offense. On this basis, Myles maintains that the 2014 sentencing entry imposing postrelease control in his prior felony case is "void." Myles further contends that the trial court erred in imposing

Case No. 9-19-74

a judicial sanction under R.C. 2929.141 in the case *sub judice* because he was placed on post-release control pursuant to a "void" judgment entry in his prior felony case.

**{¶52}** In support of his argument on appeal, Myles heavily relies upon the decision of the Supreme Court of Ohio in *State v. Bishop*, 156 Ohio St. 3d 156, 2018-Ohio-5132. In a plurality opinion, the Supreme Court in *Bishop* held that a trial court during the plea colloquy must inform a defendant *who is on post-release control*, *and is pleading guilty to a new felony offense*, of the trial court's authority to revoke the defendant's postrelease control in the prior case and impose a prison term consecutively to any term of imprisonment it imposes for the new felony offense. *Bishop* at ¶ 14-17. Specifically, the Supreme Court held that a trial court's failure to inform the defendant that the court would be required to impose the postrelease control sentence consecutively to the underlying felony offense sentence is a violation of Crim.R. 11(C)(2)(a). *Bishop* at ¶ 20.

**{¶53}** The procedural posture of the case *sub judice* is clearly distinguishable from the one in *Bishop*. Specifically, Myles' conviction in the instant case did not involve a plea. Rather, Myles was convicted by a jury at trial. Therefore, the fulfillment of a trial court's duty under Crim.R. 11(C)(2)(a) with regards to advising a defendant of its authority under R.C. 2929.141 at the time a plea is entered is not implicated in this case.

{¶54} Moreover, Myles is taking the position on appeal of challenging the sentencing judgment entry imposing his postrelease control *in another case* that is outside the record of the case before this Court on appeal. As a result, Myles urges us to take judicial notice of the judgment entry in his 2014 felony case in order to substantiate his claim that the sentencing entry in that case is "void," and therefore that the trial court had no authority to impose the judicial sanction pursuant to R.C. 2929.141 in this case.

{¶55} The Supreme Court has recently clarified that any "sentencing errors in the imposition of postrelease control *render the sentence voidable, not void*, and the sentence may be set aside if successfully challenged on direct appeal." *State v. Harper*, ---Ohio St.3d.---, 2020-Ohio-2913, ¶ 42 (emphasis added). Therefore, even assuming the judgment entry in his 2014 felony case is flawed, as Myles contends, such error renders the sentence voidable and not subject to collateral attack here because the time for direct appeal of that judgment has expired. This notwithstanding, we decline to take judicial notice of a judgment entry from another case not properly entered into the record before the trial court in this case. Accordingly, we conclude that Myles has failed to establish that the trial court erred in imposing a judicial sanction under R.C. 2929.141 on this basis.

{¶56} Finally, Myles asserts that his trial counsel was ineffective for failing to raise the aforementioned arguments during the sentencing hearing. In order to

establish a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052(1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989). The failure to make either showing defeats a claim of ineffective assistance of counsel. *Bradley* at 143, quoting *Strickland* at 697. ("[T]here is no reason for a court deciding an ineffective assistance of counsel claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

{¶57} Having found no merit to these alleged errors, we conclude that Myles has failed to substantiate his ineffective assistance of counsel claim. Based upon the foregoing discussion, the fifth, sixth, and seventh assignments of error are overruled.

*Eighth Assignment of Error*

{¶58} In his eighth assignment of error, Myles claims the trial court erred in failing to merge his possession of cocaine and possessing criminal tools convictions as allied offenses for sentencing purposes in violation of R.C. 2941.25.

*Standard of Review*

{¶59} An appellate court should apply a *de novo* standard of review in reviewing whether two offenses are allied offenses of similar import. *State v.*

*Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 28. Myles failed to object to the imposition of multiple punishments. Nonetheless, the Supreme Court of Ohio has held that the imposition of multiple sentences for allied offenses of similar import is plain error. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 31, citing *State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087.

*Relevant Authority*

{¶60} R.C. 2941.25 governs multiple counts and states the following:

**(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.**

**(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.**

{¶61} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, syllabus, the Supreme Court of Ohio held the following:

**1. In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors—the conduct, the animus, and the import.**

**2. Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.**

**3. Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.**

The Supreme Court in *Ruff* explained:

**At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.**

*Ruff*, 2015-Ohio-995 at ¶ 26.

*Discussion*

{¶62} Myles argues that his possessing criminal tools conviction should have merged with his possession of cocaine conviction. According to Myles, the digital scale is "inextricably linked to his alleged possession of cocaine." (Appt. Brief at 27).

{¶63} "[P]ossession of criminal tools is not an allied offense of either possession of a controlled substance or trafficking." *State v. Olmstead*, 5th Dist.

-32-

Ashland No. 18-COA-016, 2018-Ohio-5301, ¶ 27. In *State v. Dammons*, 8th Dist. Cuyahoga No. 94878, 2011-Ohio-2908, the Eighth District Court of Appeals determined that possession of criminal tools, in that matter a cell phone, and possession of drugs were not allied offenses. *Dammons* at ¶ 24. The court in *Dammons* reasoned,

> **Here, defendant was charged with possessing money and a cell phone "with purpose to use it criminally in the commission of a felony." Accordingly, it was not possible for defendant's possession of these items alone to result in a conviction for either drug trafficking or drug possession. Similarly, his possession of drugs did not establish a possession of criminal tools charge; despite his convictions for drug trafficking and drug possession. E.g., *State v. Byers*, Cuyahoga App. No. 94922, 2011-Ohio-342, ¶ 9 ("The ubiquitousness of cell phones is such that the mere possession of a cell phone is not ipso facto proof that it was used in drug trafficking.")**

{¶64} *Accord State v. McDonald*, 8th Dist. Cuyahoga No. 105276, 2018-Ohio-484, ¶ 43 (possession of criminal tools is not the same conduct as trafficking or possessing drugs); *State v. Brownlee*, 8th Dist. No. 2018-Ohio-3308 ¶ 13 (The drugs Brownlee sold were not the basis for the possession of criminal tools counts) *State v. Hurley*, 3d Dist. Hardin No. 6-13-02, 2014-Ohio-2716, ¶ 65, citing *State v. Dammons*, 8th Dist. Cuyahoga Nos. 94878, 2011-Ohio-2908, ¶ 24.

{¶65} We concur with the reasoning expressed by these courts. Therefore, we conclude that the conduct underlying the possession of criminal tools was separate from the conduct underlying the possession of cocaine for the purposes of

the *Ruff* analysis. As such, we do not find that the trial court erred in failing to merge Myles' possession of cocaine conviction with his conviction for possessing criminal tools. Accordingly, we overrule the eighth assignment of error.

{¶66} For all of these reasons, we overrule the assignments of error and affirm the judgment and sentence of the trial court.

*Judgment Affirmed*

**PRESTON and ZIMMERMAN, J.J., concur.**

**/jlr**